
Fifth Third Mortgage Company

# CORRESPONDENT LENDING AGREEMENT

This Correspondent Lending Agreement (the "Agreement") is entered into on _August 30_, 20_10_, by and between Fifth Third Mortgage Company an Ohio corporation, with its principal place of business at 38 Fountain Square Plaza, Cincinnati, OH 45263, Fifth Third Mortgage-MI, LLC, a Delaware limited liability company, with its principal place of business at 1850 East Paris Ave., S.E., Grand Rapids, MI 49546 (collectively "FTMC"), and their successors and assigns, and Guaranteed Rate, INC , ("Originator") with its principal place of business at
   (Corporation, LLC)

3940 N Ravenswood Ave Chicago, IL 60613 (collectively "Parties").
   (Street Address, City, State, Zip)

WHEREAS, Originator is a licensed, registered and/or exempt mortgage lender engaged in the business of originating and/or acquiring Loans of various types; and

WHEREAS, Originator desires to submit Loans to FTMC, from time to time for consideration and purchase of the Loan and its servicing rights by FTMC; and

WHEREAS, from time to time, FTMC desires to purchase Loans from Originator under programs offered by FTMC in accordance with the terms and conditions provided in this agreement and pursuant to FTMC's current policies, procedures, credit and Loan Program guidelines in place at the time the request is submitted.

NOW THEREFORE, for mutual consideration the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

## DEFINITIONS

"**Agency**" – Shall mean Federal Housing Administration ("FHA"), Federal National Mortgage Association ("FNMA"), Federal Home Loan Mortgage Corporation ("FHLMC"), Government National Mortgage Association ("GNMA"), Veterans Administration ("VA"), Department of Housing and Urban Development ("HUD"), or any successor to any such agency, other any other federal or state agency which sponsors mortgage loans and any applicable Investor.

"**Agreement**" – This agreement and all exhibits, schedules and addenda to this Agreement, as the same may from time to time be amended or supplemented by one or more instruments executed by all parties.

"**Applicable Law**" – Any federal, state or local constitution, statute, ordinance, code, rule, regulation or similar legal requirement applicable to the origination or servicing of mortgage loans or any other activity that is the subject of this Agreement.

"**Borrower**" – A customer of either party to this Agreement whose Loan is owned by Originator which is submitted by Originator to FTMC for purchase.

"**Closing Date**" – The date on which the Mortgage Documents are signed.

"**Date of Repurchase**" – Date of written notice from FTMC to Originator requesting repurchase of the Loan File.






"**ECOA**" – The Equal Credit Opportunity Act.

"**Guide**" – The Correspondent Seller Guide and any amendments thereto.

"**Investor**" – Any investor, public or private, to which or with which FTMC sells or securitizes any mortgage loan.

"**Loan**" – A consumer purpose 1-4 family, residential, purchase money or refinance, first lien mortgage or deed of trust that is offered under the FTMC Loan Program or purchased by FTMC from Originator, including the Loan File.

"**Loan File**" – A Loan File is a Loan evidenced by a Note, secured by the related Mortgage and any and all supporting documentation, materials and disclosures that is submitted or required to be submitted by Originator to FTMC pursuant to the Loan Program or Applicable Law, together with the associated servicing rights for that Note and Mortgage.

"**Loan Program**" – Collectively means the Guide, any product manual, any Commitment, rate sheets, communiques, any applicable published Agency guidelines, any other policies, procedures and/or requirements of FTMC issued from time to time by FTMC electronically or in writing and any other information related Fifth Third Mortgage Company's correspondent lending program contained on the FTMC website or Wholesale Connect and any revisions or amendments to any of the forgoing.

"**Mortgage**" – A valid and enforceable mortgage, deed of trust or other instrument pledging real property as security for payment of a Note.

"**Mortgage Documents**" – Documents executed or provided in connection with a Loan, including but not limited to, the mortgage, note, security agreement and any other document required under the Loan Program or by any government or private investor.

"**Mortgaged Property**" – The interest in real property that Borrower intends to or does pledge as collateral for repayment of the Note and which is intended to be or will be encumbered by the Mortgage.

"**Note**" – A valid and enforceable promissory note or other instrument which evidences a Borrower's obligation to repay a Loan.

"**Purchase Date**" – The date on which an individual or pool of Loan Files is purchased by FTMC from Originator.

## ARTICLE I
## COMMITMENTS AND PROCESSING

1.1. **Commitments.** At the request of the Originator, if Originator complies with the terms of this Agreement, and if the proposed or existing Loan File, conforms with FTMC's then applicable Loan Program and any applicable Agency guidelines, FTMC may, in its sole and absolute discretion, issue a Commitment Letter to Originator for the purchase by FTMC of the Loan File ("Commitment") which sets forth the individual loan terms, which are in addition to the general terms under this Agreement, under which FTMC will purchase the Loan File. The Commitment shall be solely for the benefit of Originator. Originator shall submit the request to purchase to FTMC as outlined in the Guide.

1.2. **Terms Of Commitments.** A Commitment shall expire on the date specified in the Commitment. Upon the written request of Originator, Fifth Third may, in its sole and absolute discretion, extend the expiration date of the Commitment. Such extension shall only be effective upon issuance by Fifth Third of a written notice to Originator and may require additional fees as outlined in the Loan Program. Notwithstanding anything

 

Fifth Third Mortgage Company

contained in this Agreement to the contrary, FTMC shall only be obligated to purchase a Loan File for which a Commitment has been issued if Originator and the Loan File strictly conform to the terms of the Commitment, Loan Program and this Agreement.

1.3. **Processing Of Loan File.** FTMC may review any Loan File submitted by Originator for purchase under this Agreement, including, without limitation, the right to re-underwrite the Loan File. If, upon review, FTMC determines in its sole discretion that the Loan File fails to meet any of the requirements of the Commitment, Loan Program, any applicable Agency guidelines and/or this Agreement, FTMC shall have the right to decline the purchase of such Loan File. The fact that FTMC has reviewed the Loan File either prior to the Closing Date or after the Closing Date or both, does not affect any of Originator's obligations or FTMC's rights including repurchase or indemnification rights under this Agreement. In the event a Loan File is consummated which does not strictly comply with the terms of the Commitment, the Loan Program, any applicable Agency guidelines and/or this Agreement, Fifth Third may, in its sole and absolute discretion, immediately terminate the Commitment and deny the purchase or modify the terms thereof to conform with the terms of the Loan File.

## ARTICLE II
## ORIGINATOR REPRESENTATIONS AND WARRANTIES

2.1. **Originator Representations and Warranties.** Originator hereby makes to FTMC the representations, warranties and covenants set forth in the Loan Program, this Agreement and any Commitment issued for each Loan File to be purchased by FTMC as of the Purchase Date of each and every loan purchased by FTMC from Originator. All representations, warranties and covenants shall be deemed to have been relied on by FTMC regardless of any separate or independent investigation made by FTMC of any Originator representation, warranty or covenant.

## ARTICLE III
## REPURCHASE AND INDEMNIFICATION OBLIGATIONS

3.1. **Repurchase By Originator.** Originator hereby agrees to repurchase any Loan File sold to FTMC pursuant to this Agreement within thirty (30) calendar days of receipt of written notice from FTMC of any of the following circumstances and said repurchase obligation shall not be affected in any way by any normal and customary servicing of the Loan File, including but not limited to any loss mitigation efforts or agreements made by FTMC.

3.1.1. If any documents pertaining to a Loan File for which a Commitment was issued and found not to conform with the terms of this Agreement, whether such defect was discovered before or after the Loan File was purchased by FTMC and if Originator has not cured such defect within a period of thirty (30) days after FTMC notifies Originator of the defect. If said cure would not allow the Loan File to be sold to Freddie Mac, Fannie Mae, Ginnie Mae or any other secondary market investor then Originator shall not be permitted to cure and must repurchase the Loan File.

3.1.2. Originator fails to observe or perform in any material respect any of the representations, warranties or agreements contained in this Agreement, the Loan Program and/or as contained in any Commitment issued by FTMC.

3.1.3. Failure by Originator to deliver the Loan File to FTMC on a timely basis as set forth in the Loan Program.

3.1.4. A Mortgage becomes two (2) or more monthly payments past due (delinquent) within six (6) months from the date of sale of the Loan File to FTMC. A loan with two (2) monthly payments past due is a loan

 

wherein Mortgagor has failed to pay monthly payments, including all sums due pursuant to the Mortgage contracts, and two (2) payments remain unpaid on the sixteenth day of the second month. This provision only applies if Originator has been granted delegated underwriting authority by FTMC which at this time has not been granted to Originator. The Parties shall execute an amendment to this Agreement upon Originator receiving delegated underwriting authority from FTMC at which time this provision shall apply.

3.1.5. The Borrower was in breach under the Mortgage Documents as of the Purchase Date.

3.1.6. Any evidence of fraud in the origination or sale of the Loan File is revealed through an audit or any other procedures by FTMC or any other entity.

3.1.7. If at any time it is discovered through any means that loans were originated through the use of any 3rd or 4th party originators.

3.1.8. If FTMC is obligated to repurchase the Loan File from Freddie Mac, Fannie Mae, Ginnie Mae or any other private investor to whom FTMC sold the Loan File.

3.2. **Repurchase Price and Option.** As outlined in the Guide, FTMC may, in its sole and absolute discretion and at its sole option, in lieu of requiring Originator to repurchase a Loan File, permit Originator to indemnify FTMC against all claims, causes of action, suits, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature and character whatsoever, including without limitation reasonable attorneys' fees, which may arise due to any of the repurchase obligations. Such indemnification terms and conditions shall be set forth in a separate agreement to be executed by both parties. Should FTMC require repurchase, Originator shall pay to FTMC the repurchase price as outlined in the Guide.

3.3. **Indemnification.** In addition to Originator's repurchase obligations under this agreement, Originator shall indemnify, defend and hold FTMC and its affiliates, subsidiaries, officers, directors, employees and agents, harmless from and against any and all claims, losses, damages, costs and/or expenses, including but not limited to, reasonable attorney's fees and expenses which arise from any act or omission of Originator, its employees or agents arising out of (a) any breach of any provision of this Agreement, the Commitment or the Loan Program, (b) the origination or servicing of any loan in violation of any Applicable Law, (c) any failure to maintain any required license, permit, registration, qualification or authorizations, (d) any discrimination, or (e) any fraud, falsity, incorrectness, incompleteness or breach in any material respect of any representation or warranty made by Originator herein.

## ARTICLE IV
## FTMC REPRESENTATIONS AND WARRANTIES

4.1. FTMC Representations and Warranties. FTMC represents and warrants the following:

4.1.1. FTMC is a corporation duly organized and existing under the laws of the State of Ohio.

4.1.2. FTMC has all requisite power, authority and capacity to enter into this Agreement and to perform all obligations required of it hereunder, and its compliance with the terms and conditions hereof will not violate any provisions of its documents of organization.

4.1.3. FTMC has all applicable and required licenses and registrations required to do business in each state in which it is doing business.

## ARTICLE V
## DEFAULT

 

5.1. **Default.** Originator shall be deemed to be in default of this agreement in the event any of the following occur:

    5.1.1. Originator is not in compliance with all Applicable Laws relating to the origination or servicing of Loan Files;

    5.1.2. Originator is not qualified to do business and in good standing in the state in which the Mortgaged Property is located;

    5.1.3. Originator defaults in the performance of any term, covenant or condition in this Agreement and fails to cure such default for a period of ten (10) days after written notice thereof by FTMC;

    5.1.4. Originator breaches any warranty, covenant or any representation in this Agreement; or

    5.1.5. There is a dissolution, termination of existence, insolvency, inability to meet any debt as it matures, appointment of receiver or assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Originator or Originator is enjoined, restrained or in any way prevented by court order or administrative proceeding from conducting all or any part of its business affairs, FTMC may, in its sole and absolute discretion, terminate the Agreement and all Commitments without further notice.

## ARTICLE VI
## LOAN FRAUD

6.1   **Loan Fraud.** Originator bears responsibility for all actions performed in the course of business of its employees, licensees and agents. The submission of a Loan File to FTMC containing false or misrepresented information is a federal and/or state crime and FTMC will cooperate with government agencies and law enforcement officials to pursue parties who provide false information or participate in fraudulent activity. The following are examples of activities which could lead to such actions being taken against Originator:

    (a) submission of inaccurate information, including but not limited to false statements on loan applications and falsification of documents purporting to substantiate credit, employment, deposit balances, ownership of real property and other asset or debt information, false personal information concerning the borrower including identity, and ownership/non-ownership of real property;

    (b) forgery or misrepresentation of any kind contained in any document;

    (c) inaccurate representation of current occupancy or intent to maintain required occupancy as agreed in the application and Loan closing documents;

    (d) lack of due diligence or appropriate concern by Originator and its employees in obtaining, ascertaining and divulging the authenticity of all documents submitted to FTMC;

    (e) acceptance of information or documentation which is known or suspected to be inaccurate or acceptance of information which should be known to be or suspected to be inaccurate, including but not limited to the concurrent processing of multiple owner-occupied Loan applications from a single applicant, or permitting an applicant or other interested party to assist in the processing of a Loan application; and

    (f) failure of Originator to disclose any relevant or pertinent information.




## ARTICLE VIII
## NOTICES

7.1 Notices. All notices, requests, demands or other communications required by, or otherwise given with respect to this Agreement shall be in writing and shall delivered personally, by Facsimile or other form of electronic communication, including email, first-class, registered, certified or overnight mail postage prepaid, or by nationally recognized overnight courier in each case to the applicable addresses set forth below. Notice is deemed to be given when delivered personally, via facsimile or other form of electronic communication, including email, upon electronic or written confirmation of receipt, or if sent by courier or overnight mail, one day after delivery to the courier, or if mailed, three days after the date of deposit in the United States mail. Originator consents to receipt of all product or program updates, marketing materials, pricing information, notices or other communications from FTMC regarding this Agreement by facsimile, email or other form of electronic communication. Any notice required under this Agreement provided to FTMC shall be in writing to the addresses identified below. Either party may change its address or contact person by written notice to the other as outlined in this section. Originator shall immediately notify FTMC of any changes in its contact information as identified below.

If to FTMC:
Jan Powell
5001 Kingsley Drive, MD 1 MOB 2V
Cincinnati, OH 45227

With copy to Counsel:
Fifth Third Bank Legal Department
38 Fountain Square Plaza, MD 10 AT 76
Cincinnati, OH 45263

If to Originator, to the address, facsimile and email address information contained below the Originator's signature line.

## ARTICLE VIII
## MISCELLANEOUS

8.1. Advertisement. Originator shall not use any name, logo, symbol, product name, trade name or service mark of FTMC or its affiliates in any fashion including, but not limited to, advertising, marketing, promotional materials, presentations, publications, press releases, or any other materials distributed or displayed by Originator without prior written approval of FTMC.

8.2 Additional Assurances; Inspection. Originator agrees, from time to time, upon FTMC's request, to provide FTMC with additional evidence that Originator's representations and warranties contained herein are true and correct. This may include allowing FTMC or its agent to conduct periodic on-site audits of Originator's business activities related to the Agreement, including but not limited to all books, records, files, policies or procedures of Originator pertaining or relating to any Loan Files sold to and/or registered with FTMC. Any audit conducted by FTMC will be at FTMC's expense and shall occur during normal business hours. In addition, Originator will submit to FTMC its annual financial statement, certified by an independent public accountant, within ninety (90) days following the end of each fiscal year.

 

Fifth Third Mortgage Company

8.3 **Power of Attorney.** Originator hereby acknowledges that FTMC has a vested interest in ensuring all applicable documents in the Loan File have been prepared, executed, delivered and properly recorded in order to consummate the purchase transaction. In this regard, Originator does hereby irrevocably make, constitute and appoint FTMC and any of its properly designated officers, employees, or agents as the true and lawful attorneys of Originator with power to sign the name of Originator on any document or instrument that in FTMC's reasonable opinion, must be signed in order to effectuate the terms and provisions of the Agreement, including, but not limited to, any applications, disclosures, notices, affidavits, arrangements, allonges, notes, assignments and/or endorsements of loan documents pertaining to any Loan File funded by FTMC. This power, being coupled with an interest is irrevocable until this Agreement is terminated and all of Originator's obligations hereunder which may survive termination have been fully satisfied.

8.4 **No Partnership/Agency.** FTMC and Originator acknowledge that at all times they are operating as independent parties. Nothing contained herein shall constitute a partnership or joint venture between FTMC and Originator. Originator is not nor may it hold itself out to be, FTMC's agent, employee, or independent contractor. Originator shall have no authority to bind FTMC in any manner whatsoever and Originator agrees to take no actions that may create the impression of any such authority.

8.5 **No Implied Agreement.** This Agreement does not require Originator to submit any Loan File to FTMC for purchase nor does it require FTMC to purchase any Loan File. Originator may submit a Loan File to FTMC at any time during the term hereof or may submit none in its sole discretion. FTMC may elect to purchase certain Loan Files or none from Originator in FTMC's sole discretion.

8.6 **Entire Agreement.** This Agreement incorporates by reference, the terms and conditions set forth in the Loan Program, all of which together constitute a single agreement which is the final and exclusive statement of all agreements and understandings between the parties with respect to the subject matter described herein. This Agreement may not be amended or modified orally, and no provision of this Agreement may be waived or amended, except in writing and signed by the parties hereto, however, by its terms, the Loan Program may be amended or supplemented by FTMC from time to time, as is reasonably necessary to improve the operation and efficiency thereof and such changes do not require a signed amendment. Notice of any amendment or supplement will be given by FTMC to Originator as provided for in this Agreement. To the extent there is a conflict between this Agreement and any provision under the Loan Program, the Loan Program provision shall control. This Agreement will not be construed against any party by reason of its preparation and any ambiguities in this Agreement will be resolved by applying the most reasonable interpretation given the parties intentions at the time of contracting.

8.7 **Termination.** Either party may terminate this Agreement at any time and for any reason upon written notice to the other party as provided herein. Any failure by Originator to comply with any of the provisions pertaining to the Loan Program or this Agreement, subject Originator to immediate termination of the approval to continue the Correspondent Lending program with FTMC. Any purchase obligation outlined in any outstanding Commitment to Originator at the time of termination shall be, at FTMC's sole option, cancelable in the event of a breach of this Agreement or the Loan Program or the discovery of fraud, deception, concealment or material misrepresentation associated in any manner with any of Originator's loans purchased or submitted for purchase by FTMC.

8.8 **Survival.** The representations and warranties made, as well as the repurchase obligations and indemnifications required, by Originator under this Agreement, shall survive any termination of this Agreement by either party. Additionally, FTMC's rights and remedies regarding those representations, warranties, repurchase obligations and indemnifications will remain in full force and effect notwithstanding any such termination.

8.9 **Right of Setoff.** The right of Originator or any person claiming to be entitled to receive funds or


**Fifth Third Mortgage Company**


compensation from FTMC hereunder, shall at all times be subordinate to the right of FTMC to offset or apply any such funds or compensation against any indebtedness of Originator. Setoff may be exercised by FTMC at any time without prior notice to Originator, however, FTMC shall notify Originator within a reasonable time after affecting any such setoff. Failure to provide notice shall not invalidate the setoff. The right of setoff survives any termination of this Agreement.

8.10 **No Waiver, Remedies Cumulative.** Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. All rights and remedies of FTMC under this Agreement are distinct from and are cumulative with any other rights or remedies under this Agreement or any rights afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

8.11. **Disputes.** This Agreement shall be governed by and construed and enforced under the laws of the State of Ohio, without regard to its conflict of laws principles. Any judgment in such proceeding may be enforced in the appropriate court.

8.12. **Assignment.** FTMC relies upon Originator's particular personal abilities in carrying out Originator's obligations under this Agreement; therefore no assignment of Originator's rights, responsibilities, duties or obligations shall be made.

8.13. **Severability.** The titles and headings of the various articles and paragraphs in this Agreement are intended solely for convenience of reference. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed or if any such provision is held invalid, void or unenforceable, such provision will be deemed to be restated to reflect as nearly as possible the original intention of the Parties in accordance with Applicable Law and the remainder of this Agreement will remain in full force and effect. If it is not possible to restate the provision to reflect the intention of the Parties in accordance with Applicable Law, then the provision shall be struck from the agreement and the remainder of the Agreement will remain in full force and effect.

8.14. **Signature.** A party's facsimile signature of this Agreement shall be binding as if it were an original.

8.15. **Reproduction of Documents.** This Agreement and all documents relating hereto may be reproduced by any photographic, photostatic, microfilm or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding if the original signed document is not available.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

_Guaranteed Rate_
("Originator" Company Name)

By: _[signature]_

Name: _Victor Ciardelli_

Title: _President_



# FIFTH THIRD BANK

April 25, 2012

Guaranteed Rate, Inc
Attn: Victor Ciardelli III          773-654-2037
3940 North Ravenswood Avenue
Chicago, IL 60613

    RE: Murphy ("Borrower"), Loan Number # 413379389
        1903 Elmore Avenue, Downers grove, IL 60515
        Repurchase Amount: $540,361.48
        Closed 9/30/11, Purchased 10/17/11

Mr. Ciardelli:

Please be advised that serious and material inaccuracies have been discovered on the above referenced loan originated and closed by Guaranteed Rate, Inc (GR). The subject loan was subsequently sold to Fifth Third Mortgage Company (Fifth Third) through our correspondent relationship established on August 30, 2010. Contractual representation and warranties have been breached compelling the originator to repurchase the loan in the total amount of $540,361.48.

**Loan Issue(s):** Fifth Third has determined that the subject loan is not of acceptable quality due to GR's failure to recognize the loan amount exceeded the limits of a non high cost area county under the program. This issue has made the loan unsalable on the secondary market and triggers the repurchase provisions of our agreement..

**Contractual Obligations:** Pursuant to the terms of the "Correspondent Lending Agreement", (the "Agreement"), The originator represented and warranted that they would repurchase any loan file sold to Fifth Third within 30 days of written notice if the originator fails to observe or perform in any material respect any of the representation, warranties or agreements in the Loan Program. The originator has 30 calendar days from this correspondence to complete the repurchase of the subject loan. We have determined that this defect is incurable.

Fifth Third will consider all options in the resolution of this issue. Our hope is to maintain our mutually beneficial business partnership by working together to resolve this issue. Please contact me immediately at the number listed below upon receipt of this letter. If you choose not to discuss the repurchase resolution; Fifth Third request that you respond formally in writing within 14 days of this correspondence.

Sincerely,

SCOTT A. BURKE
FIFTH THIRD BANK
11590 NORTH MERIDIAN STREET
1ST FLOOR, MAIL DROP: 843361
CARMEL, INDIANA 46032

E-mail: scotta.burke@53.com
Phone: 317-587-7789

EXHIBIT 2